IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CYNTHIA A. SCOTT,                                              CV. 06-6220-HU
                              Plaintiff,

v.                                                            FINDINGS AND
                                                             RECOMMENDATION

MICHAEL J. ASTRUE,
Commissioner of Social Security,
                              Defendant.
_____

HUBEL, Magistrate Judge:

INTRODUCTION

        Plaintiff Cynthia Scott brings this action for judicial review of a final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying her application

for supplemental security income ("SSI") under Title XVI of the Social Security Act.  This court

has jurisdiction under 42 U.S.C. § 405(g).   For the reasons set forth below, this court

recommends remanding this case for further administrative proceedings consistent with this

opinion.

BACKGROUND

Scott was 45 years old at the time of the hearing.  She completed the tenth grade.  She

worked in the past as an auto mechanic helper, housekeeper, and grocery clerk.

Scott alleges disability based on emphysema and chronic depression.  Tr. 120.[1]  She

claims these conditions cause the following symptoms:  back and lower chest pain, frequent

respiratory and pulmonary illness, difficulty breathing, fatigue, extreme emotions, anxiety,

nervousness, difficulty sleeping, lack of energy, and panic attacks.  At various times, Scott was

diagnosed with spontaneous pneumothorax,[2] pleurisy,[3] bronchitis, pneumonia, emphysema,

chostochondritis,[4] lung disease, amphetamine dependence, alcohol dependence, nicotine

dependence, major depressive disorder, personality disorder, anxiety related disorder, cognitive

disorder, post-traumatic stress disorder, and psychosis.  She stopped working sometime late in

2000 or early 2001 due to pneumonia.  Tr. 213.  She testified that she does not think she could

work full-time because she gets ill frequently causing her to miss work, and it takes her a long

time to recover.  Tr. 531.

Scott previously filed an application for SSI on March 6, 2001, which was denied on

─────────────────

[1]Citations are to the page(s) indicated in the official transcript of the administrative record filed with the Commissioner's Answer.

[2] Spontaneous pneumothorax is a sudden collection of air or gas in the chest that causes the lung to collapse in the absence of a traumatic injury to the chest or lung.

[3] Pleurisy is caused by swelling and irritation of the membrane that surrounds the lungs. It is usually a symptom of another illness and is also called Pleuritic Chest Pain.

[4] Costochondritis is an inflammation of the junctions where the upper ribs join with the cartilage that holds them to the breastbone or sternum. The condition causes localized chest pain.

September 19, 2001.  Her current application was filed January 19, 2002, and was denied initially and on reconsideration.  On January 25, 2006, a hearing was held before an Administrative Law Judge ("ALJ") at which Scott amended her alleged onset date to September 21, 2003.  In a decision dated February 17, 2006, the ALJ found Scott not disabled and therefore not entitled to benefits.  On July 11, 2006, the Appeals Council denied Scott's request for review, making the ALJ's decision the final decision of the Commissioner.

STANDARDS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The initial burden of proof rests upon the claimant to establish his or her disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c (a)(3)(A).  The Commissioner bears the burden of developing the record.  DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Andrews, 53

F.3d at 1039.  The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, however, if "the evidence is susceptible to more than one rational interpretation."  Andrews, 53 F.3d at 1039-40.

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court.  Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 531 U.S. 1038 (2000).  "The proper course, except in rare circumstances, is to remand to the agency for further investigation or explanation."  Moisa v. Barnhart, 367 F.3d 882, 886-87 (9th Cir. 2004), citing INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam).

## MEDICAL RECORDS

The medical records accurately set forth Scott's medical history as it relates to her claims.  The court has carefully reviewed all the records, and the parties are familiar with them.  A summary of the medical records that are relevant to Scott's legal arguments appears below.

The record shows that Scott had a long history of chronic depression and anxiety.  She was also a lifelong smoker, and had a history of drug and alcohol abuse with frequent periods of sobriety.  Her treating physician, Dr. Eikrem, diagnosed depression and panic attacks as far back as January 1993.  Tr. 340.  Dr. Eikrem treated her depression with different anti-depressant medication for over ten years.  Dr. Eikrem recommended she contact the mental health crisis line or the county mental health department on numerous occasions, and once opined that she may need hospitalization due to possible psychotic features.  Tr. 338 (August 1993); Tr. 324 (June 2001); Tr. 323 (October 2001); Tr. 343 (November 2003).  She received several psychological evaluations.  In August 2001, Dr. Kruger examined her and diagnosed her with a major

depressive disorder, recurrent, severe without psychotic features; drug and alcohol dependence in early partial remission; and a GAF of 52. Tr. 213-18. In September 2001, reviewing psychologist Dr. Rethinger diagnosed her with a major personality disorder NOS, and drug and alcohol dependence in early partial remission. Tr. 220-23. In September 2002, examining psychologist Dr. Stoltzfus diagnosed her with post-traumatic stress disorder,[5] a major depressive disorder, alcohol and drug dependence in six-month remission, nicotine dependence, and assessed a GAF of 50. Tr. 247-50. Also in September 2002, reviewing psychologist Dr. Henry diagnosed her with a major depressive disorder (an affective disorder); post-traumatic stress disorder (an anxiety-related disorder); and substance addiction disorder. Tr. 289. In April 2005, Dr. Lange performed a neuropsychological evaluation, provided a long, detailed analysis of multiple psychometric test results, and diagnosed Scott with a major depressive disorder, a cognitive disorder, and alcohol and drug dependence in remission. Tr. 437-49. Dr. Lange also found that in spite of her mild cognitive difficulties, Scott was generally able to function within the average to above average range. Scott was referred by the state for counseling and had three sessions with a counselor, Ms. Doede, in August 2005. Ms. Doede assessed her with post-traumatic stress disorder, dysthymic disorder, and a GAF of 50. Tr. 508-514.

Scott had a history of pulmonary problems. She was a lifelong smoker though many doctors recommended she quit. She had a spontaneous pneumothorax in 1986, and a 15% pneumothorax in October 1994. Tr. 333. She continued to have pleuritic pain later in October 1994. Tr. 332. She was diagnosed with pneumonia in January 1999 that required multiple

---

[5] Scott's diagnoses of post-traumatic stress disorder were related to her years of abuse at the hands of domestic partners.

rounds of antibiotics and persisted until March 1999, when Dr. Eikrem opined that she was developing emphysema.  Tr. 328-29, 324-25.  Scott experienced a possible pneumothorax in January 2001, developed pleuritic pain on the left side, and emphysema symptoms.  Tr. 324-25.  Spirometric testing in August 2001 showed decreased lung capacity.  Tr. 207-212.  The tests were administered with and without an inhaler and showed no significant difference after an inhaler was used.  Tr. 207.  In January 2002, Scott had pleurisy again, and in March she had pneumonia.  Tr. 244, 321-22.  In September 2002, she had chest wall pain.  Tr. 318.  In June 2003, she was diagnosed with costochondritis.  Tr. 311.  In January and February 2004, she was diagnosed with bronchitis, and in July 2004 she was diagnosed with a lower respiratory tract infection.  Tr. 308, 370-71.  She had chest pain and respiratory difficulties in March 2005, and a sinus infection in January 2006 that included scattered rales.[6]  Tr. 367-68, 518.  In January 2006, treating physician Dr. Eikrem opined that Scott had significant, irreversible lung disease, frequent bouts with pneumonia, and had experienced collapsed lungs.  Tr. 522.  He recommended that the ALJ order a pulmonary function test to document the extent of her lung disease because she could not afford testing.  Id.  He also opined that her lung disease made her susceptible to frequent illness.  Id.

In addition, Scott had a history of drug and alcohol abuse, and had been a victim of domestic violence.  Scott was treated on an ongoing basis with anti-depressants including Paxil, Prozac, Imipramine, and Trazodone which was also prescribed to help her sleep.  Scott was treated with various antibiotics for her respiratory illnesses.  She reported these medications gave

---

[6] Rales are wet, crackly lung noises heard on inspiration which indicate fluid in the air sacs of the lungs.  Rales are often indicative of pneumonia.

her inconsistent relief from her ongoing condition.

## DISABILITY ANALYSIS

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999):

Step One.  The ALJ determines whether claimant is engaged in substantial gainful activity.  If so, claimant is not disabled.  If claimant is not engaged in substantial gainful activity, the ALJ proceeds to evaluate claimant's case under step two.  20 C.F.R. §§ 404.1520(b), 416.920(b).

Step Two.  The ALJ determines whether claimant has one or more severe impairments significantly limiting him from performing basic work activities.  If not, the claimant is not disabled.  If claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under step three.  20 C.F.R. §§ 404.1520(c), 416.920(c).

Step Three.  The ALJ next determines whether claimant's impairment "meets or equals" one of the impairments listed in the Social Security Administration ("SSA") regulations found at 20 C.F.R. Part 404, Subpart P, Appendix 1.  If so, claimant is disabled.  If claimant's impairment does not meet or equal one listed in the regulations, the ALJ's evaluation of claimant's case proceeds under step four.  20 C.F.R. §§ 404.1520(d), 416.920(d).

Step Four.  The ALJ determines whether claimant has sufficient residual functional capacity ("RFC") despite the impairment or various impairments to perform work he or she has done in the past.  If so, claimant is not disabled.  If claimant demonstrates he or she cannot do

work performed in the past, the ALJ's evaluation of claimant's case proceeds under step five.  20 C.F.R. §§ 404.1520(e), 416.920(e).

Step Five.  The ALJ determines whether claimant is able to do any other work.  If not, claimant is disabled.  If the ALJ finds claimant is able to do other work, the ALJ must show a significant number of jobs exist in the national economy that claimant can do.  The ALJ may satisfy this burden through the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines found at 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the ALJ demonstrates a significant number of jobs exist in the national economy that claimant can do, claimant is not disabled.  If the ALJ does not meet this burden, claimant is disabled.  20 C.F.R. §§ 404.1520(f)(1), 416.920(f)(1).

At steps one through four, the burden of proof is on the claimant.  Tackett, 180 F.3d at 1098.  At step five, the burden shifts to the ALJ to show that the claimant can perform jobs that exist in significant numbers in the national economy.  Id.

## THE ALJ'S FINDINGS

At step one, the ALJ found that Scott had not engaged in substantial gainful activity  at any time since the alleged onset date.  Tr. 16.  This finding is not in dispute.  At step two, the ALJ found that Scott had the following severe impairment: lung disease.  Tr. 17.  This finding is in dispute.  At step three, the ALJ found that none of Scott's impairments met or equaled a listing.  Id.  This finding is not in dispute.

In determining residual functional capacity ("RFC"), the ALJ found that Scott retained the capacity to perform a significant range of light work.  Tr. 20.  The ALJ found that she could lift 20 pounds occasionally, 10 pounds frequently, and that she was able to stand, sit or walk at

least six hours each in an eight-hour workday.  Id.  He also found that she should avoid

concentrated exposure to fumes, gasses, odors and hazards.  Id.  This finding is in dispute.

At step four, the ALJ found that Scott was unable to perform her past relevant work.  Tr.

21.  This finding is not in dispute.  At step five, relying on the testimony of a vocational expert

("VE"), the ALJ found that Scott could work as a small products assembler, storage facility

rental clerk, and food assembler.  Tr. 20.  This finding is in dispute.

DISCUSSION

Scott contends that the ALJ erred by:  (1) improperly rejecting the opinion of treating

physician Richard Eikrem, M.D.; (2) finding Scott's mental impairments non-severe at step two;

and (3) improperly rejecting Scott's testimony.

Opinion of Dr. Richard Eikrem

Scott argues that the ALJ wrongly rejected Dr. Eikrem's January 24, 2006 opinion that

Scott had significant, irreversible lung disease, and should be referred for pulmonary function

tests to document the extent of her lung disease.  At her hearing, Scott's attorney asked the ALJ

to refer her for testing to update spirometry tests done in 2001, and the ALJ said he would

consider doing so, but never mentioned the issue in his written opinion.  Tr. 528-29.

In the Ninth Circuit, "where [a] treating doctor's opinion is not contradicted by another

doctor, it may be rejected only for 'clear and convincing' reasons."  Lester v. Chater, 81 F.3d 821,

830, (9th Cir. 1995), quoting Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991).  "Clear and

convincing reasons" are also required to reject the treating doctor's ultimate conclusions.  Id.,

citing Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  If a treating physician's opinion is

contradicted by that of another physician, specific and legitimate reasons supported by substantial

evidence in the record are required to reject the treating physician's opinion. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. Holohan, 246 F.3d at 1202; 20 C.F.R. § 404.1527(d)(2); SSR 96-2p. Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, the court credits that opinion as a matter of law. Lester, 81 F.3d at 834.

In his January 2006 opinion, Dr. Eikrem said:

> Ms. Scott has significant, irreversible lung disease. Her lung disease has caused her to experience frequent bouts with pneumonia. It makes her more susceptible to pneumonia and she has experienced collapsed lungs. Due to lack of insurance and money, Ms. Scott has been unable to pursue further workup regarding her condition such as pulmonary function tests. [I] do recommend performance of pulmonary function tests in order to document the full extent of her lung disease.
> ...
> In [my] opinion, her lung disease makes her susceptible to frequent illness, and would cause her to be absent from work with a frequency of two days per month on average or more.

Tr. 522. The ALJ rejected Dr. Eikrem's opinion and wrote:

> The opinion of Dr. Eikrem is not supported by the treatment record and is given little weight. The claimant's lung disease has never been of sufficient severity to require inhalers although she continues to smoke. At a June 2005 evaluation there was no evidence of active pulmonary disease. While the claimant has experienced occasional bouts of respiratory illness, there is no evidence her symptoms are not controlled by typical antibiotic treatments. The opinion of Dr. Eikrem is given little weight.

Tr. 19.

Scott argues that the ALJ reasons for dismissing Dr. Eikrem's opinion were insufficient.

Page 10 - FINDINGS AND RECOMMENDATION

This court agrees.  Scott has provided sufficient medical evidence of ongoing respiratory difficulties such that Dr. Eikrem's opinion is not contrary to the treatment record.  Also, Dr. Eikrem was Scott's treating physician for over fifteen years such that he had a better opportunity than other physicians to know and observe Scott.  See Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987) (explaining the rationale for giving greater weight to a treating physician's opinion).  The ALJ's discussion of Scott's non-use of an inhaler is equally unconvincing.  First, the medical evidence shows that an inhaler did not improve her respiratory functions during spirometry testing in 2001.  There is no evidence in the record that any physician recommended Scott use an inhaler, that an inhaler was prescribed, or that an inhaler would improve her condition.  Also, the ALJ did not cite any medical authority for his conclusion that the severity of Scott's lung disease was called into question by her non-use of an inhaler.  An ALJ may not substitute his own judgment for that of a physician when the record does not contain a basis for the ALJ  to make his own medical findings.  Ratto v. Sec. of Health and Human Svcs., 839 F. Supp. 1415, 1427 (D. Or. 1993).

    The ALJ's citation to Scott's June 2005 evaluation by Dr. North is also insufficient evidence to dismiss the entirety of Dr. Eikrem's opinion.  Dr. North's 30-minute examination of Scott which found no respiratory difficulties was  performed without the type of specialized pulmonary testing recommended by Dr. Eikrem.  The ALJ's final reason for dismissing Dr. Eikrem's opinion is simply not supported by the record:  the medical evidence shows that Scott's symptoms were not "controlled by typical antibiotics" in that she often required multiple courses of antibiotics because the prescribed antibiotics were sometimes ineffective, and those antibiotics did not prevent recurrent respiratory problems and pleuritic pain.  Overall, the ALJ provided

insufficient reasons for assigning little weight to Dr. Eikrem's opinion.

The ALJ erred in not following Dr. Eikrem's 2006 recommendation that pulmonary function tests be performed. Scott notes that spirometry done in 2001 showed that her lung capacity was already close to listing level. The Commissioner does not refute this assertion. In addition to recommending further evaluation of her pulmonary condition, Dr. Eikrem also noted that Scott could not afford the recommended testing on her own. If the ALJ had assigned correct weight to Dr. Eikrem's opinion, the ALJ had a duty to develop the record with regard to Scott's respiratory condition by ordering up-to-date spirometric testing. See Smolen v. Chater, 80 F.3d 1273, 1288) (9th Cir. 1996) (duty to fully and fairly develop the record and assure that the claimant's interests are considered exists even when the claimant is represented by counsel); 20 C.F.R. § 404.1527(c)(3) (ALJ may order further medical examinations at the expense of the Social Security Administration). This court recommends a remand to follow Dr. Eikrem's January 2006 recommendation that pulmonary function tests be performed in order to document accurately the full extent of Scott's lung disease.

Mental Impairments at Step Two

Scott contends that the ALJ erred in finding her mental impairments non-severe at step two. An impairment is severe for the purposes of step two of the evaluation process if it significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 416.920(c). Basic work activities are the abilities and aptitudes necessary to do most jobs. Id. at § 404.1521(b). These include physical functions, such as seeing, hearing, speaking, walking, standing and sitting, and mental functions, such as understanding, remembering, using judgment and responding appropriately to work situations. 20 C.F.R. §§ 404.1521(b), 416.921(b). An

impairment can be found "not severe" only if it is a minor abnormality that has no more than

minimal effect on the claimant's ability to work.  Smolen, 80 F.3d at 1290.  The inquiry at step

two is a de minimis screening tool to dispose of groundless claims.  Id.

　　　　Scott argues that the ALJ erred at step two because the medical evidence of record shows

that her mental impairments have more than a minimal effect on her ability to work.  However, at

step two, the task is not to identify each individual impairment that would independently satisfy

the de minimis severity screening.  The question is whether any combination of impairments

have more than minimal impact on the ability to do basic work activities.

　　　　The ALJ resolved step two in Scott's favor and properly continued to the remaining steps

of the sequential decision-making process.  Any error in designating specific impairments severe

could not have prejudiced Scott at step two because step two was resolved in her favor.  See

Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005) (any error in omitting obesity from list of

severe impairments at step two was harmless where step two was resolved in the claimant's

favor);  Lewis v. Astrue, No. 14-14714, 2007 WL 2325018, at *2 (9th Cir. Aug 16, 2007) (failure

to list bursitis as severe at step two was harmless error where limitations posed by bursitis were

considered at step four).

　　　　Also, because this case must be remanded to allow for supplemental medical evidence

regarding Scott's pulmonary functions, Scott's mental impairments, whether severe or non-

severe, must be reevaluated in combination with her other impairments during the sequential

evaluation process after the submission of new medical evidence.

Scott's Testimony and Credibility

　　　　Scott contends that the ALJ provided insufficient reasons for rejecting her testimony.  If

Page 13 - FINDINGS AND RECOMMENDATION

there is medical evidence of an underlying impairment, the ALJ may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). "Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be 'clear and convincing.'" Lester, 81 F.3d at 834 (citation omitted).

Here, the ALJ relied on Scott's daily activities and various aspects of the medical evidence to discredit Scott's allegations that her respiratory problems, depression and anxiety make her unable to work.  Because the medical record will be updated on remand and Scott will submit new evidence as to her activities of daily living as a result of her impairments, this court need not make a finding as to whether the ALJ erred in discrediting Scott's subjective complaints.  Scott's credibility must be reevaluated on remand.

///

///

///

///

///

///

///

///

///

///

Page 14 - FINDINGS AND RECOMMENDATION

CONCLUSION

For the foregoing reasons, this court recommends remanding this case pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this opinion, including an order that pulmonary function tests be performed.

SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review.  Objections, if any, are due October 16, 2007.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.  If objections are filed, a response to the objections is due October 30, 2007, and the review of the Findings and Recommendation will go under advisement with the District Judge on that date.

Dated this_1st___ day of October, 2007.

/s/ Dennis J. Hubel

_____

Honorable Dennis J. Hubel
United States Magistrate Judge